UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEREK ANDREW JOHNSON,

        Petitioner,

v.                                   Case No. 05-CV-73988-DT
                                   Honorable Patrick J. Duggan

MILLICENT WARREN,

        Respondent.

_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on July 9, 2007.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
                  U.S. DISTRICT COURT JUDGE

Petitioner Derek Andrew Johnson has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, a state prisoner who is currently incarcerated at the Thumb Correctional Facility in Lapeer, Michigan, challenges his convictions of three counts of assault with intent to commit murder, one count of felon in possession of a firearm, and one count of possession of a firearm during the commission of a felony. For the reasons set forth below, this Court denies the petition.

## I.  Background

On December 10, 2002, a jury in the Wayne County Circuit Court, State of

Michigan, convicted Petitioner of three counts of assault with intent to murder, one count of being a felon in possession of a firearm, and one count of possession of a firearm during the commission of a felony. On January 6, 2003, the state trial judge sentenced Petitioner to three concurrent terms of fifty to seventy-five years imprisonment for the assault convictions, a concurrent term of two to five years imprisonment for the felon in possession conviction, and a consecutive term of two years imprisonment for the felony-firearm conviction.

Petitioner thereafter filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

> I.    The court clerk administered a defective oath to the jurors at the commencement of Appellant Johnson's trial which constitutes a structural error mandating a reversal of his convictions.
>
> II.   The prosecutor's misconduct throughout the trial violated Appellant Derek Johnson's right to due process of law and a fair trial as guaranteed by both the federal and state constitutions.
>
> III.  Appellant Derek Johnson was denied the effective assistance of counsel guaranteed him by the federal and state constitutions at trial. Therefore, he is entitled to a new trial and/or hearing pursuant to *People v Ginther*, 390 Mich 436 (1973).
>
> IV.   Appellant Derek Johnson's convictions and sentences for both felon in possession of a firearm and possession of a firearm in the commission of a felony violate the federal and state constitutional protection against double jeopardy.
>
> V.    The cumulative effect of the foregoing errors denied

Appellant Derek Johnson of a fair trial in violation of
due process of law and requires reversal.

Petitioner added the following claims in a *pro per* brief:

    I.       Defendant was denied his right to fair trial where the
jury was unfairly prejudiced when the trial court
admitted into evidence testimony of victim's
miscarriage even though medical expert testimony
could not establish a line between the shooting and the
miscarriage.

    II.     Defendant was denied his right to a fair trial where the
court allowed testimony that the defendant sold drugs.

    III.   The prosecutor in his opening and closing statements
made several statements to the jury which he knew to
be untrue, do not come from the evidence or the facts
of the case, and are in direct conflict with the
testimony given by the state's own witnesses and
experts.

    IV.   The prosecutor erred grievously where he forced
witness and victim, Milton Payne, to say that officials
involved in this case were either lying or mistaken.

On August 26, 2004, the Michigan Court of Appeals affirmed Petitioner's
convictions and sentence. *People v. Johnson*, No. 246940 (Mich. Ct. App. Aug. 26,
2004) (unpublished opinion). Petitioner filed an application for leave to appeal in the
Michigan Supreme Court, raising the same claims that he presented to the Michigan
Court of Appeals. The Michigan Supreme Court denied leave to appeal on May 26, 2005.
*People v. Johnson*, 472 Mich. 907, 696 N.W.2d 710 (2005). Petitioner did not file any
petitions, application, or motions with respect to the judgment until he filed the pending
habeas petition on October 18, 2005. (Pet. at 3.)

Petitioner presents the following claims in his pending application for a writ of habeas corpus:

I.     The prosecutor's misconduct throughout the trial violated Petitioner's right to due process of law and a fair trial as guaranteed by the federal constitution.

II.    Petitioner was denied effective assistance of counsel guaranteed him by the federal constitution at trial. He is entitled to the issuance of this writ or an evidentiary hearing.

III.   Petitioner was denied a fair trial where the jury was prejudiced when the trial court allowed testimony of victim's miscarriage even though the medical expert testimony could not establish a line between the shooting and the miscarriage.

IV.   Petitioner was denied a fair trial where the trial court allowed testimony that Petitioner sold drugs.

V.    The prosecutor in his opening and closing statements made several statements to the jury which he knew to be untrue, did not come from the evidence or the facts of the case, and are in direct conflict with testimony given by the state's own witnesses and experts.

VI.   The prosecutor erred grievously where he forced witness and victim, Milton Payne, to say that officials involved in this case where either lying or mistaken.

## II.  Underlying Facts

The Michigan Court of Appeals summarized the underlying facts of this case as follows, and those findings are presumed correct pursuant to 28 U.S.C. § 2254(e)(1)[1]:

---

[1]Section 2254(e)(1) provides:

This shooting arose from a dispute between defendant and [Velvet] Ochel over payment for a lawn mower. [Milton] Payne testified that he accompanied Ochel during her purchase of the lawn mower from defendant, whom Payne also identified in court as "Polo," and whom Payne generally encountered on the streets of Inkster at least once each day. Ochel initially gave defendant $40 worth of crack cocaine as a partial payment for the mower, for which she then owed $10 or $20, and took possession of it. The next day, Ochel paid her debt to defendant, who seemed angry and swore at her. He threatened to kill her and Ochel offered defendant some unkind words in return. Within the next fifteen to twenty minutes, defendant approached Ochel and suggested "no hard feelings," after which the lawn mower dispute appeared to have passed. Ochel did not see defendant again until the time of the shooting.

A few weeks later, Ochel, [Cheryl] Fields and Payne were driving back from a gas station. Around 1:30 a.m., Ochel drove the victims back toward Payne's house, and as they reached Harriet Street, Fields noticed an African-American male wearing dark clothing jogging toward the back of Payne's house. Ochel backed the Grand Am, which contained Payne in the front passenger seat and Fields in the back seat, into Payne's driveway. Just as Ochel had completely backed the Grand Am into the driveway, placed her foot on the brake and shifted the transmission into park, Fields saw defendant "dart from behind [Payne's] house."

Ochel testified with certainty that after she had backed the Grand Am into Payne's driveway, she turned to her right

---

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

toward the car's rear passenger side and saw defendant, who wore a dark coat, standing "right there with a gun and it was over." Defendant immediately began shooting. Ochel sustained five gunshots in her legs, one through her arm or elbow, and one that struck her bowels. Fields sustained one gunshot wound to the neck and her pregnancy ended in a miscarriage. Payne sustained a gunshot wound to his lower right abdomen that impacted his diaphragm and liver.

The victims managed to pull out of the driveway and drive a few blocks away. Ochel then passed out and drove the car onto a curb. Bypassers called the police and when police arrived, all three victims identified defendant as their assailant.

*People v. Johnson*, No. 246940, slip op. at 1-2 (footnote omitted).

### III.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this Court's review of Petitioner's application for habeas relief. Specifically, the statute states in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d). Under the "contrary to" clause in subsection (1), a federal court

may grant habeas relief only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 1525 (2000). The words "contrary to" should be construed to mean "diametrically different, opposite in character or nature, or mutually opposed." *Id.*

Under the "unreasonable application" clause in subsection (2), a federal court may grant habeas relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the case presented. *Williams*, 529 U.S. at 407-08, 120 S.Ct. at 1520-21. Relief also is available under this clause if the state court's decision either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 120 S.Ct. at 1520; *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005). The proper inquiry for the "unreasonable application" analysis is whether the state court's decision was "objectively unreasonable" and not simply erroneous or incorrect. *Williams*, 529 U.S at 407, 120 S.Ct. at 1520; *Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004).

In analyzing whether a state court's decision is "contrary to" or an "unreasonable application" of clearly established Supreme Court precedent, a federal court may look only to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71, 123 S.Ct.

1166, 1172 (2003); *Williams*, 529 U.S. at 412, 120 S.Ct. at 1523.

## IV. Petitioner's Prosecutorial Misconduct Claims

In the first, fifth, and sixth claims of his petition, Petitioner alleges that he was deprived of a fair trial due to prosecutorial misconduct. In the Michigan Court of Appeals, Petitioner raised thirty-one alleged instances of prosecutorial misconduct. The Michigan Court of Appeals found that Petitioner failed to object at trial to all but three of those allegations and that, therefore, only three claims of error were preserved for appellate review.

The first prosecutorial misconduct allegation the state court found preserved for appeal was Petitioner's assertion that the prosecutor, during his closing argument, improperly reiterated Inkster Police Detective Anthony Abdallah's testimony that he requested a SWAT team to effectuate Petitioner's arrest "because of 'the seriousness of the crime and his feeling of how dangerous defendant was.'" *People v. Johnson*, No. 246940, slip op. at 6. The second claim preserved for appeal was Petitioner's allegation that the prosecutor during rebuttal argument improperly compared defense counsel to ink shooting octopi. Lastly, the Michigan Court of Appeals found preserved for appeal Petitioner's claim that the prosecutor improperly elicited testimony from Fields that Petitioner sold her drugs. The state appellate court reviewed Petitioner's remaining prosecutorial misconduct allegations only for plain error.

## A. Procedural Default

Respondent contends that, except for the three claims set forth above, Petitioner's

remaining prosecutorial misconduct claims are procedurally defaulted. The doctrine of

procedural default provides:

> In all cases in which a state prisoner has defaulted his federal
> claims in state court pursuant to an independent and adequate
> state procedural rule, federal habeas review of the claims is
> barred unless the prisoner can demonstrate cause for the
> default, and actual prejudice as a result of the alleged
> violation of federal law, or demonstrate that failure to
> consider the claims will result in a fundamental miscarriage of
> justice.

*Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991). For the doctrine

to apply, a firmly established state procedural rule applicable to the petitioner's claim

must exist and the petitioner must have failed to comply with that state procedural rule.

*Warner v United States*, 975 F.2d 1207, 1213-14 (6th Cir. 1992). Additionally, the last

state court from which the petitioner sought review must have invoked the state

procedural rule as a basis for its decision to reject review of the petitioner's federal claim.

*Coleman*, 501 U.S. at 727-30, 111 S. Ct. at 2553-54. If the last state court from which the

petitioner sought review affirmed the conviction both on the merits and, alternatively, on

a procedural ground, the procedural default bar is invoked. *Rust v. Zent*, 17 F.3d 155, 161

(6th Cir. 1994). If the last state court judgment contains no reasoning, but simply affirms

the conviction in a standard order, the federal habeas court must look to the last reasoned

state court judgment rejecting the federal claim and apply a presumption that later

unexplained orders upholding the judgment or rejecting the claim rested upon the same

ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 2594 (1991).

The Michigan Court of Appeals provided the last reasoned state court judgment addressing Petitioner's prosecutorial misconduct claims. As indicated above, the court held that Petitioner failed to preserve all but three of his claims of error by failing to contemporaneously object at trial. This contemporaneous-objection rule was frequently followed before Petitioner's 2002 trial, and specifically with respect to claims of prosecutorial misconduct. *See, e.g., People v. Buckey*, 424 Mich. 1, 17-18, 378 N.W.2d 434, 440 (1985); *People v. Austin*, 209 Mich. App. 564, 570, 531 N.W.2d 811, 814 (1995).

Habeas review therefore is foreclosed with respect to twenty-eight of Petitioner's thirty-one alleged instances of prosecutorial misconduct unless Petitioner demonstrates either: "(1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim[s], or (2) that a lack of federal habeas review of his claim[s'] merits 'will result in a fundamental miscarriage of justice.'" *Hicks v. Straub*, 377 F.3d 538, 551-52 (6th Cir. 2004) (quoting *Coleman*, 501 U.S. at 750, 111 S. Ct. 2546).

The Supreme Court has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. *Schlup v. Delo*, 513 U.S. 298, 320-21, 115 S. Ct. 851, 864 (1995). This requires a petitioner to submit new and reliable evidence of his actual innocence demonstrating that no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. *Id*. at 327, 115 S. Ct. at 867. As Petitioner presents no new evidence to establish his innocence, the Court turns to the cause and prejudice

exception to the procedural default rule.

Petitioner argues that he can establish cause and prejudice by his ineffective assistance of counsel claim. To demonstrate ineffective assistance of counsel, Petitioner must establish that his counsel's performance was deficient and that the deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). "To establish prejudice, a defendant must demonstrate a reasonable probability that 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Rickman v. Bell*, 131 F.3d 1150, 1155 (6th Cir. 1997) (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068). This analysis necessarily entails an examination of the merits of Petitioner's claims, even if they are defaulted. Thus the Court finds that the easiest approach is to simply address the merits of Petitioner's prosecutorial misconduct claims.

## B. Applicable Law

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). To be cognizable, the prosecutor's misconduct "must have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464 (1986)(internal quotation marks omitted)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'"

*Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997). In this regard, "the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993) (quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 947 (1982)).

The court first must determine whether the prosecutor's conduct was improper. If a statement was improper, four factors must be considered in determining whether the impropriety is so flagrant "as to render the entire trial fundamentally unfair":

> (1) the likelihood that the remarks would mislead the jury or prejudice the accused, (2) whether the remarks were isolated or extensive, (3) whether the remarks were deliberately or accidentally presented to the jury, and (4) whether other evidence against the defendant was substantial.

*Bowling*, 344 F.3d at 512-13. In considering these four factors, a federal court must bear in mind the heightened deference a habeas court must give under the AEDPA to a state court's evaluation of the petitioner's claim. *Id.* at 513 (citing *Macias v. Makowski*, 291 F.3d 447, 453-54 (6th Cir. 2002)("If this court were hearing the case on direct appeal, we might have concluded that the prosecutor's comments violated Macias's due process rights. But this case is before us on a petition for a writ of habeas corpus. So the relevant question is not whether the state court's decision was wrong, but whether it was an unreasonable application of clearly established federal law."))

### C. Analysis

#### 1. Petitioner's due process and fair trial claim (Claim One)

In his first claim for relief, Petitioner alleges numerous instances of prosecutorial

misconduct during voir dire and opening, closing, and rebuttal arguments. Petitioner also alleges prosecutorial misconduct relating to the introduction of evidence concerning Field's miscarriage, the ammunition box top recovered from Petitioner's possession at the time of his arrest, and Petitioner's prior bad acts. Finally, Petitioner asserts that the prosecutor improperly impeached his alibi witness, Connie Gray.

The Michigan Court of Appeals addressed most of Petitioner's misconduct allegations in the following manner:

> We conclude that the arguments and introduction of evidence by the prosecutor, taken as a whole and analyzed in the context of the arguments made by the defense counsel did not abridge defendant's right to a fair trial or impair his substantial rights. No error occurred in the course of the prosecutor's jury voir dire, during which the prosecutor properly posed inquires to ascertain that the potential jurors could fairly and impartially try the instant case. Similarly, no error occurred during the prosecutor's opening statement, in which the prosecutor accurately described the facts that he expected the evidence to show; the prosecutor did not improperly vouch for the credibility of Fields and Ochel by suggesting during his opening statement that he had some special knowledge concerning the truth of their testimony, and did not urge the jury to convict defendant as part of its civic duty. The challenged portions of the prosecutor's closing and rebuttal arguments reflect that the prosecutor appropriately made various arguments on the basis of the evidence presented during trial and the reasonable inferences arising therefrom, including that Fields and Ochel were worthy of belief, and that the prosecutor also accurately described the relevant law. The prosecutor did not suggest during closing argument that he had special knowledge concerning the veracity of Fields and Ochel and did not personally attack defense counsel. Furthermore, the prosecutor properly introduced relevant evidence of Fields' miscarriage, the ammunition box top, and alibi witness

Connie Gray's potential bias to testify favorably to defendant because he sometimes purchased drugs for her, none of which evidence occasioned any unfair prejudice that substantially outweighed its probative value. The prosecutor also properly elicited Fields' testimony that, hours before the shooting, she saw defendant in possession of a semiautomatic weapon similar to that likely used in the shooting, which testimony constituted direct evidence of defendant's guilt not subject to MRE 404(b) analysis.

*People v. Johnson*, No. 246940, slip op. at 4-5 (internal citations and footnote omitted).

With respect to the prosecutor's solicitation of evidence regarding Petitioner's possession of a weapon on occasions prior to the shooting, the court further stated that, even if the evidence was improper, it did not affect the outcome of the trial. *Id*. at 7. The appellate court addressed separately Petitioner's assertions that the prosecutor improperly denigrated defense counsel and engaged in misconduct by eliciting evidence concerning Petitioner's drug sales several weeks prior to the shooting and his "dangerous" background.

During his rebuttal argument, the prosecutor compared defense counsel's tactics during his closing statement to an octopi's ink-shooting defense mechanism. The Michigan Court of Appeals concluded that this was a reasonable response to defense counsel's argument. *Id*. at 6. As to the prosecutor's questioning of Fields regarding her knowledge of Petitioner's drug sales prior to the shooting, the court concluded that such evidence was "highly relevant to her ability to identify defendant as the shooter, the centrally disputed issue at trial." *Id*. at 7. Finally, during his rebuttal argument, before being interrupted by a sustained defense objection, the prosecutor reiterated the trial

-14-

testimony of Inkster Police Detective Anthony Abdallah, who alluded to Petitioner's background to justify his decision to request a SWAT team to effectuate Petitioner's arrest. The Michigan Court of Appeals held:

> The prosecutor accurately summarized Abdallah's explanation that he requested the SWAT team because of "the seriousness of the crime and his feeling of how dangerous defendant was." On cross-examination by defense counsel, Abdallah added that he had reviewed defendant's background. While the prosecutor approached the potentially improper topic of defendant's criminal background, he disclosed no details concerning that background for the jury's consideration. The brief, general, and isolated mention of defendant's background did not deprive him of a fair trial.

*Id*. at 6.

In regard to Petitioner's claims that he was denied due process of law and a fair trial because of prosecutorial misconduct, this Court finds that the Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. The state appellate court conducted a thorough analysis of those claims. Petitioner therefore is not entitled to a writ of habeas corpus based upon his first ground for relief. Accordingly, Petitioner also cannot show prejudice resulting from his trial counsel's failure to object to the alleged instances of prosecutorial misconduct. Thus the Court also holds that Petitioner is not entitled to habeas relief based on his claim of ineffective assistance of counsel due to counsel's failure to object to this alleged misconduct.

## 2. Petitioner's claim that the prosecutor made statements regarding facts not in evidence, which the prosecutor knew to be untrue (Claim Five)

In his fifth claim for relief, Petitioner contends that the prosecutor made two untrue statements during his closing argument which were not supported by the evidence and, in fact, were in direct conflict with the testimony provided by the state's own witnesses and experts. Petitioner first points to this statement, where the prosecutor apparently was attempting to explain Petitioner's motive for the shooting:

> It ain't about the money. We ain't talking about dead presidents here. We ain't talking about this. He's rolling dope over there. Polo's rolling dope over there, and some skinny, white B - - no disrespect intended - - has fronted him off, . . .

(12/9/02 Tr. at 136.) Petitioner next points to the prosecutor's "explanation" to the jury of what happened to the gun used in the shooting:

> Like he's [defendant] dumb enough to take the heater with him. That baby's dirty. He knows he shot up that green car. he knows at a minimum Mr. Ochel was hit from the way that car pulled away, and he knows that likely the two got hit too. That heater never went further than the green house on Ash, back to the source house, or maybe the brick house on Ash.

(*Id*. at 147.)

It is not apparent from the Michigan Court of Appeals' decision whether the court specifically addressed the above statements. The court only stated generally, as indicated previously, that "[t]he challenged portions of the prosecutor's closing and rebuttal arguments reflect that the prosecutor appropriately made various arguments on the basis of the evidence presented during trial and the reasonable inferences arising therefrom, ..." *People v. Johnson*, No. 246940, slip opinion at 5. This Court finds that the appellate

court's analysis applies equally to the two statements to which Petitioner objects in his

fifth claim for relief.  Moreover, even if these two statements were improper, they were

not so egregious as to deny Petitioner a fundamentally fair trial.

### 3.  Petitioner's claim that the prosecutor erred by forcing witness and victim Milton Payne to say that officers involved in the case were either lying or mistaken (Claim Six)

Petitioner contends that the prosecutor improperly elicited Payne's testimony that

prosecution witnesses, specifically the police officers who arrived on the scene following

the shooting, provided untrue testimony.  During the prosecutor's direct examination of

Payne, he asked whether several police officers had made a mistake or lied in their

previous testimony that he (Payne) had identified Petitioner as his assailant immediately

after the shooting.  As to this issue, the state appellate court reasoned:

> Although the prosecutor asked Payne an inquiry of
> questionable propriety about the veracity of the police officer
> witnesses, defendant failed to object to the inquiry, which
> therefore is subject to plain error analysis.  In light of the fact
> that the prosecutor asked only one isolated question of Payne
> regarding his belief in the veracity of the police officers, and
> the fact that a timely objection and curative instruction could
> have eliminated any possible prejudice, we conclude that this
> allegation of misconduct does not warrant reversal.

*People v. Johnson,* No. 246940**,** slip op. at 7-8 (internal citations omitted).

This Court agrees with the Michigan Court of Appeals and concludes that, even

though the prosecutor's question may have been improper, it was not "so egregious so as

to render the entire trial fundamentally unfair."  *Cook v. Bordenkircher*, 602 F.2d 117,

119 (6th Cir. 1979).  The question is not whether the state court's decision was wrong,

but whether it was an unreasonable application of clearly established federal law.  Under the circumstances of this case, it cannot be said that the state court's decision was unreasonable.

### V.  Petitioner's Claims that He Was Denied a Fair Trial Due to the Admission of Certain Evidence (Claims Three and Four)

In his third and fourth claims for relief, Petitioner contends that he was denied a fair trial as a result of the admission of certain evidence.

### A.  Applicable Law

It is well-established that "'federal habeas corpus review does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 480 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102 (1990)).  "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial."  *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994). "When an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief."  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.) (citations omitted), *cert. denied*, 540 U.S. 930, 124 S. Ct. 345 (2003).

### B.  Analysis

### 1.  Testimony regarding Fields' miscarriage (Claim Three)

In his third claim for habeas relief, Petitioner alleges that he was denied a fair trial

as a result of the admission of evidence concerning Fields' miscarriage where Fields'

treating physician testified at trial that she could not establish what caused the

miscarriage.  With respect to this evidence, the state appellate court noted :

> Even in the absence of any expert testimony that conclusively
> linked defendant's shooting of Fields with her miscarriage
> shortly after the shooting, the jury reasonably could infer that
> defendant's conduct caused Fields to miscarry.  The extent of
> Fields' injuries had relevance to defendant's intent to murder
> her, a material fact in this case.  In light of Fields' doctor's
> testimony that she could not link with certainty Fields'
> miscarriage and the shooting, the miscarriage was not highly
> probative of the extent of Fields' injuries.  But because
> defendant entirely fails to set forth with any specificity that
> the miscarriage evidence caused him unfair prejudice, we
> cannot conclude that any unfair prejudice substantially
> outweighed the probative value of the miscarriage evidence.
> Therefore, the circuit court did not abuse its discretion in
> admitting the miscarriage testimony.

*People v. Johnson*, No. 246940, slip op. at 5 n. 3.

This Court cannot find that the trial court's admission of Fields' miscarriage was

so egregious as to deny Petitioner a fair trial.  As the state appellate court stated, this

evidence bore some relevance to material issues at trial, even though its probative value

may have been diminished by the doctor's inability to definitively link the miscarriage to

the shooting.  Moreover, the doctor's uncertainty as to whether the shooting caused

Fields' miscarriage likely also diminished the prejudice to the Petitioner arising from the

introduction of any evidence concerning the miscarriage.  This is because the jury

therefore might not have faulted Petitioner for the miscarriage. Thus, this Court finds that

the Michigan Court of Appeals' decision regarding the admission of the miscarriage

-19-

evidence was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  Petitioner is thus not entitled to habeas relief based on this claim.

### 2.  Testimony regarding Petitioner's prior drug sales (Claim Four)

In his fourth ground for relief, Petitioner argues that he was denied a fair trial as a result of Fields' testimony regarding Petitioner's prior drug sales.  Fields testified that Petitioner sold drugs from the driveway of a residence on Ash Street and that on one occasion, two to three weeks before the shooting, she approached Petitioner at that location to inquire about buying some cocaine, but that she ultimately decided not to buy any drugs.  The Michigan Court of Appeals found that, because there was no objection to the introduction of the evidence, Petitioner forfeited this issue.  *Id*. at 6.  The court nevertheless went on to conclude that the evidence was probative of Fields' familiarity with Petitioner and therefore her ability to identify him as the shooter.  *Id*.  The court further concluded that the probative value of this evidence was not outweighed by any unfair prejudice, especially because the prosecutor– without objection– *and* defense counsel introduced other evidence regarding Petitioner's and the victims' drug use.  *Id*.

This Court agrees with the state court's analysis and therefore finds that the introduction of evidence relating to Petitioner's prior drug sales did not deprive him of his right to a fair trial.  Petitioner therefore is not entitled to habeas relief based on this claim.

### VI.  Ineffective Assistance of Counsel (Claim Two)

In addition to claiming ineffective assistance of counsel due to his trial counsel's

failure to object to the previously discussed instances of alleged prosecutorial misconduct, Petitioner alleges that his trial counsel was ineffective due to his failure to present an effective alibi defense and an expert witness on identification testimony and to object to the introduction of certain hearsay evidence.  Specifically, as to the latter, Petitioner claims that defense counsel should have objected to the testimony of several Inkster police officers and an emergency medical technician relating the victims' identifications of Petitioner as the shooter.

## A. Applicable Law

As indicated previously, the federal courts apply a two-part test to evaluate ineffective assistance of counsel claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. In assessing counsel's performance, courts must consider "whether 'counsel's representation fell below an objective standard of reasonableness,' as measured by 'prevailing professional norms.'" *Rickman*, 131 F.3d at 1154 (quoting *Strickland*, 466 U.S. at 687-688, 104 S.Ct. at 2064-65). There is a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. "To establish prejudice, a defendant must demonstrate a reasonable probability that 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Rickman*, 131 F.3d at 1155 (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068).

## B. Analysis

### 1. Alibi defense

Petitioner contends that he had a viable alibi defense but his trial attorney did not effectively advance this defense. With respect to this claim, the Michigan Court of

Appeals stated:

> Contrary to defendant's first contention of ineffective
> assistance, defense counsel did present an alibi defense
> through the testimony of Connie Gray, specifically that she
> and defendant spent time together in Inkster between 11:30
> p.m. on June 17, 2002, and 1:00 a.m. on June 18, 2002, then
> together went to the Romulus home of Linda Neal by 1:50
> a.m., where they remained throughout the next day. Defense
> counsel also presented the testimony of Neal. Although Neal
> could not recall precisely at what time defendant and Gray
> arrived at her Romulus residence, Neal's testimony
> corroborated that they arrived sometime during the early
> morning hours of June 18, 2002. We find no deprivation of a
> substantial defense.

*People v. Johnson*, No. 246940, slip op. at 8. Petitioner further argues that his counsel

was ineffective in presenting his alibi defense because counsel failed to object to the

prosecutor's cross-examination of Gray. The state court concluded that "[t]he

prosecutor's questions of Gray regarding her relationship with defendant, including their

shared drug use and whether defendant purchased Gray's crack for her, had relevance to

testing Gray's credibility and illustrating her potential bias in favor of defendant." *Id*. at

8-9. The court further concluded that questions of Gray concerning her and Petitioner's

drug use June 17 and 18, 2002– over the period when the shooting occurred and Gray

claimed she and Petitioner were in Romulus, Michigan– were relevant to test her

recollection of precisely when she and Petitioner arrived in Romulus. *Id*. at 9.

Petitioner fails to present any argument to negate the state court's finding that his

trial counsel did present an alibi defense. Petitioner does not identify any additional alibi

witnesses who counsel should have investigated and/or called to testify. In fact, in his

petition, Petitioner clarifies that he only is alleging that trial counsel failed to *effectively* present an alibi defense because he failed to "protect" his alibi witness "from the prosecutor's improper" cross-examination. (Pet. at 17.) This assertion of error is unavailing. For the reasons discussed by the Michigan Court of Appeals, the prosecutor's cross-examination of Gray was not improper and any objection to those questions would not have been sustained.

## 2. Failure to Hire an Expert in Misidentification

Petitioner alleges that defense counsel's failure to hire an expert in misidentification demonstrates his ineffectiveness. Petitioner believes that an expert in this area would have demonstrated the inherent unreliability and fallibility of Ochel's and Fields' identification of Petitioner as the shooter. The Michigan Court of Appeals rejected Petitioner's claim, finding that the decision whether to present an expert witness is a strategic one for which the court will not substitute its judgment and that expert testimony was not necessary to undermine the eyewitnesses' testimony in Petitioner's case:

> Defense counsel's determination whether to present an expert witness is presumed to be a strategic one for which this Court will not substitute its judgment. A review of the record reflects that rather than employ an expert witness, defense counsel in an apparent effort to taint or undermine the reliability of Fields' and Ochel's identifications of defendant pursued several lines of questioning during cross-examination, including the following areas: (1) counsel extensively questioned Fields and Ochel regarding their history of habitual crack use and the frequency of their drug use around the time of the shooting and on the day before the

shooting; (2) counsel elicited from Fields that shortly before the shooting, she had felt tired because of her drug use; (3) counsel asked many questions of Fields and Ochel concerning their drug use immediately before the shooting occurred; (4) counsel asked Fields many questions regarding her opportunity to see defendant, who wore dark clothes, jogging toward Payne's house in the darkness shortly before the shooting; and (5) counsel made extensive inquiries of Fields and Ochel concerning the circumstances of the shooting, including their brief, split-second opportunities to observe defendant just before the shooting, the location of the shooter's moving figure behind Payne's house and then behind a vegetation-covered fence, the darkness around Payne's house, and their inabilities to recall seeing anything after being shot. We conclude that defense counsel acted reasonably when he extensively cross-examined Fields and Ochel regarding the relevant circumstances surrounding their identifications, and that defendant has not overcome the strong presumption that counsel employed a sound trial strategy to forego perhaps lengthy expert testimony that [the jury] may have regarded as only stating the obvious: memories and perceptions are sometimes inaccurate.

*People v. Johnson*, No. 246940, slip op. at 9 (internal citations and quotation marks omitted).

This Court agrees with the state court's analysis. Petitioner provides no support for his claim that reasonably competent counsel would not proceed to trial without hiring an expert witness where identification is an issue. Petitioner's argument is even weaker in light of the numerous factors undermining the victims' ability to identify Petitioner as the shooter, which defense counsel did use to challenge their identifications. Petitioner therefore has not shown that counsel's performance was "so defective as to require reversal of a conviction" or that "counsel's representation fell below an objective standard

of reasonableness." *Strickland*, 466 U.S. at 687-688, 104 S.Ct. at 2064-65.  The Court therefore concludes that defense counsel's decision not to call an expert witness in misidentification at trial does not entitle Petitioner to habeas relief.

### 3.  Failure to Object to Hearsay Evidence

Petitioner next alleges that defense counsel should have objected to the testimony of several Inkster police officers and an emergency medical technician regarding the victims' identifications of Petitioner as their assailant in the shooting.  The Michigan Court of Appeals concluded that trial counsel was not ineffective in failing to object to this testimony because the testimony was not hearsay under Michigan Rule of Evidence 801(d)(1)(C).  *People v. Johnson*, No. 246940, slip op. at 9-10.  As the court set forth, Rule 801(d)(1)(C) provides, in relevant part, that "[a] statement is not hearsay if . . . the declarant testifies at the trial . . . and is subject to cross-examination concerning the statement, and the statement is . . . one of identification of a person made after perceiving the person."  *Id.* at 9.  The victims testified at Petitioner's trial and were subject to "potential cross-examination" concerning their prior identifications of defendant.[1]  *Id.* at 10.

To the extent Petitioner's argument is based upon state law, he fails to state a claim upon which habeas corpus relief may be granted.  *Lewis*, 497 U.S. at 780, 110 S.Ct. at

---

[1]According to the Michigan Court of Appeals, Petitioner did not take the opportunity at trial to cross-examine the victims specifically about their identification statements to the police officers and emergency medical technician.  *People v. Johnson*, No. 246940, slip op. at 10.

3102. "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law, or treaties of the United States." *Estelle*, 502 U.S. at 67-68, 112 S. Ct. at 480 (citing 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S. Ct. 175, 177 (1975)). The introduction of this relevant evidence did not violate Petitioner's due process rights to a fair trial and Petitioner fails to identify any other federal constitutional provision, law, or treatise violated as a result of its admission.

Based on the above, the Court concludes that Petitioner is not entitled to habeas relief based on his ineffective assistance of counsel claim.

## VII. Conclusion

For the reasons stated above, the Court holds that the state court's adjudication of Petitioner's claims was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. The Court therefore concludes that Petitioner is not entitled to federal habeas relief based upon the claims presented in his petition.

Accordingly,

**IT IS ORDERED** that Petitioner's petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE


Copies to:

Derek Andrew Johnson, #132152
Thumb Correctional Facility
3225 John Conley Drive
Lapeer, MI 48446

William C. Campbell, Esq.